**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANA SMOLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 20-cv-00493 |
| | ) | |
| BOARD OF EDUCATION for WEST | ) | Judge Jorge L. Alonso |
| NORTHFIELD SCHOOL DISTRICT #31, | ) | |
| WEST NORTHFIELD SCHOOL DISTRICT | ) | |
| #31, NANCY HAMMER, JEFFREY STERES, | ) | |
| DAPHNE FRANK, ROBERT REISS, and | ) | |
| BOB SPECTOR, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In her amended complaint, Plaintiff Dana Smoler brings claims under 42 U.S.C. § 1983 and state law against Defendants, the West Northfield District #31, the Board of Education for West Northfield District #31, and the five individual members of the Board of Education.[1] Defendants now move to dismiss Smoler's amended complaint in its entirety. For the reasons that follow, the Court grants in part and denies in part Defendants' motion [17].

## BACKGROUND

The Court takes the following facts from Smoler's Amended Complaint, which are accepted as true for purposes of deciding the instant motion. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

Smoler was formerly a "tenured PE / Wellness teacher" at Winkelman School, which is part of the West Northfield School District #31 ("the District"). The District is governed by the Board of Education for West Northfield School District #31 ("the Board"). The Board is made up

---

[1] The Defendant Board members are Nancy Hammer, Jeffrey Steres, Daphne Frank, Robert Reiss, and Bob Spector.

of five elected board members ("the Board members"). Among other things, the Board is responsible for hiring and firing teachers at Winkelman School.

Although the Amended Complaint is vague on detail, apparently, Smoler had some "unprofessional, negative interactions" with one of her colleagues regarding certain "minority students." In November 2018, Smoler met with the school's assistant principal to discuss the situation. Smoler told the assistant principal that she had tried to deal directly with her colleague but her colleague's responses left her feeling "abused and humiliated." Smoler alleges she never filed a formal written complaint with any administrator or the Board about the matter.

Nevertheless, school administrators launched an internal investigation based on what Smoler had told the assistant principal and eventually reported the results of the investigation to the Board. At a school board meeting on January 24, 2019, the Board discussed the matter in a closed session. Then, in an open session, the Board unanimously passed a resolution to issue Smoler a "Notice of Remedy" ("NTR"). The NTR states that Smoler's claims were fully investigated, and it was determined that the colleague acted professionally at all times. The NTR further states that Smoler "falsely reported that [she was] emotionally abused, bullied and harassed" by her colleague and that Smoler was observed crying about the situation in the hallway during school hours. The NTR concludes this conduct was unprofessional and provides specific actions Smoler would be required to take; the NTR further provides that Smoler's failure to comply with the required actions "may result in discipline, up to and including termination."

Smoler alleges that Defendants never told her about the investigation, its conclusions, or any accusations made against her prior to the Board issuing the NTR. Relatedly, Smoler alleges that Defendants never invited her or any member of her union to attend the January 2019 Board meeting.

In April 2019, Smoler went on leave for severe anxiety, and in July 2019,[2] Smoler resigned her position at the school. Smoler alleges she resigned because her working conditions had become intolerable. Smoler says that, after the Board issued the NTR, the defendants did a number of things, including (1) shunning and ostracizing Smoler; (2) changing her performance evaluation process; (3) taking away her keys and her access to the district's network; (4) falsely accusing her of making negative comments about the school's principal; and (5) falsely telling others that Smoler went on leave because she was pregnant.

In January 2020, Smoler filed the instant suit. In her amended complaint, Smoler brings claims pursuant to 42 U.S.C. § 1983 for various violations of her civil rights (Counts I, III and IV), as well as state law claims for defamation (Count II) and breach of contract (Count V). Defendants now move to dismiss Smoler's amended complaint in its entirety.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a plaintiff's complaint must contain "a short and plain statement of the claim[s] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under federal notice-pleading standards, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at

---

[2] Smoler alleges she resigned in July 2020, but the Court takes this as an inadvertent typographical error. (Am. Compl. at ¶ 44, ECF No. 6.) Smoler filed this lawsuit prior to July 2020, and her original complaint alleges she resigned as well (and contains the same apparent error). (Compl. at ¶ 43, ECF No. 1.)

556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).

## DISCUSSION

Defendants' arguments for dismissal vary by defendant. The Court first addresses the parties' arguments relating to West Northfield School District #31, then the arguments relating to the individual Board members, and finally, the arguments relating to the Board.

### I.    Claims against Defendant West Northfield School District #31

Defendants argue that the District should be dismissed because it is not a proper party. More specifically, Defendants contend that dismissal is appropriate because, under Illinois law, a school district does not have the capacity to sue or be sued. (Memo. in Support of Mot. to Dismiss at 6, ECF No. 18.) Smoler responds that the District does have the capacity to sue or be sued here, but Smoler consents to dismissing the District as a defendant, in light of the fact that she also names the Board as a Defendant. (Resp. at 4-5, ECF No. 20.)

The Court looks to Illinois law to determine whether a school district has the capacity to be sued here. *See DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973, 977 n.2 (7th Cir. 2000) (citing Fed. R. Civ. P. 17(b)). The Illinois School Code states a school district's board of education has the capacity to sue or be sued. 105 ILCS 5/10-2. Relying on this provision, Illinois courts have held that while a school board is a proper defendant, a school district is not, unless another provision of the school code or another statute specifically authorizes a school district to sue or be sued. *See Veazey v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 2016 IL App (1st) 151795, ¶ 27, 59 N.E.3d 857, 865 (Ill. App. Ct. 2016); *see also Bd. of Educ. of Bremen High Sch. Dist. No.*

*228 v. Mitchell*, 387 Ill. App. 3d 117, 120, 899 N.E.2d 1160, 1162 (Ill. App. Ct. 2008) ("[O]ur courts have defined a school district as a geographical area that generally lacks the capacity to sue unless expressly authorized by statute to do so.").

Citing *Mitchell* and a couple decisions from this district applying Illinois law, Defendants argue that "the School District's legal identity is the Board of Education" and that only the Board may sue and be sued. (ECF No. 18 at 3.) Again, the Court understands Defendants to argue that the District lacks the legal capacity to be sued. Some courts in this district have dismissed defendant school districts, or have approved of a plaintiff voluntarily dismissing a defendant school district, on this basis. *See e.g., Peoples v. Oswego Cmty. Sch. Dist.*, No. 19-cv-000568, 2020 WL 1330652, at *3 n.6 (N.D. Ill. Mar. 22, 2020) (noting that school board, as opposed to school district, was proper defendant where plaintiff brought § 1983 claims and state law tort claims); *see also Snow v. J. Sterling Morton High Sch. Dist. 201*, No. 16-CV-2685, 2016 WL 5391222, at *2 (N.D. Ill. Sept. 27, 2016) (dismissing school district where plaintiff brought Title VII claims); *Matavka v. Bd. of Educ. of J. Sterling Morton High Sch. Dist. 201*, No. 15 C 10330, 2016 WL 4119949, at *1 (N.D. Ill. Aug. 1, 2016) (approving of voluntary dismissal where plaintiff brought § 1983 and Title VII claims); *Klean v. Bd. of Educ. of Proviso Twp. Sch. Dist. 209*, No. 08 C 6233, 2010 WL 3732218, at *2 (N.D. Ill. Sept. 17, 2010) (dismissing school district where plaintiff brought § 1983 and Title VII claims).

To be clear, Illinois law does not say that a school district categorically lacks the capacity to sue or be sued; again, a school district can sue or be sued if a statute expressly permits it. *Mitchell*, 387 Ill. App. 3d at 120; *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 640 (7th Cir. 2015) (leaving open the question of whether a school district itself is amenable to suit but observing that it had dealt with claims against school districts in the past and

that the federal statutory claim plaintiff advanced would seem to expressly permit suing a school district). However, in response to Defendants' motion, Smoler does not point to a portion of the Illinois School Code or any other statute that permits her to sue the school district itself, and the Court is not aware of any such statute. Further, as stated above, Smoler consents to dismissing the District as a defendant. In light of Smoler's position, the Court dismisses West Northfield School District #31 as a defendant.[3]

## II.     Claims against Defendant Board Members

Next, Defendants argue that Defendant Board members Nancy Hammer, Jeffrey Steres, Daphne Frank, Robert Reiss, and Bob Spector should be dismissed. The Court agrees.

Aside from her defamation claim discussed below, Smoler brings claims against the Board members only in their official capacity. (*See generally* Am. Compl., ECF No. 6; *see also* ECF No. 18 at 2; ECF No. 20 at 2, 4.) Defendants argue that suing the Board members in their official capacities is the equivalent of suing the Board itself, and because Smoler already names the Board as a defendant, her official capacity claims against the Board members are redundant and should be dismissed. Smoler concedes that dismissal of the official capacity claims is appropriate on this basis. (ECF No. 20 at 4-5.) The Court agrees with the parties; alleging a claim against a defendant in his or her official capacity is merely another way of alleging the claim against the entity for which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099 (1985). Accordingly, Smoler's official capacity claims against the Board members are dismissed as

---

[3] Before consenting to dismissal, Smoler responds conclusively in a single sentence that "Illinois case law has held that a school district can sue or be sued" and cites two cases that do not support this proposition and, in relevant part, cite 105 ILCS 5/10-2, which again, refers only to the legal capacity of a school board. (*See* ECF No. 20 at 2 (citing *Bd. of Educ. of City of Chicago v. A, C &S, Inc.*, 171 Ill. App. 3d 737, 754 522 N.E.2d 950, 961 (Ill. App. Ct. 1988) and *Bd. of Educ. of Riverview Cmty. Consol. Sch. Dist. No. 2 of Wood Cty. v. Woodford Cty.*, 19 Ill. App. 3d 1078, 1080, 312 N.E.2d 724, 725 (Ill. App. Ct. 1974)). As such, Smoler's argument is perfunctory and underdeveloped and is, accordingly, deemed waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

redundant. *See e.g., A.J. & R.J. v. Butler Ill. Sch. Dist. 53*, No. 17 C 2849, 2018 WL 1469005, at *3 (N.D. Ill. Mar. 26, 2018) (dismissing official capacity claims as redundant where school board was also named); *see also Searles v. Bd. of Educ. of the City of Chicago*, No. 03 C 8966, 2004 WL 1474583, at *4 (N.D. Ill. June 29, 2004) (dismissing official capacity claims with prejudice because "where the local government unit is also a defendant in the suit, the claim against the individual in her official capacity is redundant").

Smoler also brings a state law claim for defamation against the Board members in their personal or individual capacities. Smoler's defamation claim is premised on her allegations that, at a public meeting, the Board members issued a NTR that falsely "branded plaintiff as a liar." (ECF No. 6 at ¶¶ 29-36.) Defendants argue that the Board members enjoy absolute immunity from civil liability for statements made within the scope of their position. (ECF No. 18 at 9-10.) Smoler makes no attempt to address this basis for dismissal in her response, and as such, she has forfeited this claim and has abandoned any argument against dismissing it. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *see also Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) (plaintiff's failure to respond to arguments to dismiss conspiracy claim "operates as a waiver or forfeiture of the claim").

Putting Smoler's failure to respond aside, dismissal would still be appropriate because the Board members are entitled to immunity here. Even assuming the statements at issue are defamatory, under Illinois common law, school board officials cannot be held civilly liable for such statements made within the scope of their official duties. *See Blair v. Walker*, 64 Ill.2d 1, 10, 349 N.E.2d 385, 389 (Ill. 1976); *see also Klug v. Chicago Sch. Reform Bd. of Trustees*, 197 F.3d 853, 861 (7th Cir. 1999) (affirming dismissal of complaint and noting Illinois law would provide absolute immunity to defendant school officials for defamatory statements); *Novoselsky v. Brown*,

822 F.3d 342, 349 (7th Cir. 2016) ("Illinois courts have long held that executive branch officials of state and local governments [including school board officials] cannot be civilly liable for statements made within the scope of their official duties."). As currently alleged, the Defendant Board members clearly made the statements at issue within the scope of their official duties; the statements were contained in a formal NTR, which the Board members issued during a board meeting. *See Horwitz v. Bd. of Educ. Avoca Sch. Dist. No. 37*, 260 F.3d 602, 617 (7th Cir. 2001) (finding defendants, including school board member, were absolutely immune from defamation claim based on statements made to parents regarding plaintiff's absence); *see also Cox v. Calumet Pub. Sch. Dist. 132*, 180 F. Supp. 3d 556, 563 (N.D. Ill. 2016) (dismissing defamation claim against defendant superintendent based on absolute immunity and finding that superintendent was acting in her official capacity when she told third parties that plaintiff was fired for cause). Because the Board members enjoy absolute immunity here, Smoler's defamation claim against them in their personal capacities is dismissed.

## III.     Claims against Defendant Board

Finally, the Court turns to Smoler's claims against the Defendant Board. Smoler alleges that the Board's conduct violated her civil rights, primarily her due process rights guaranteed by the Fourteenth Amendment (Counts I, III, and IV), and she also alleges the Board's actions amounted to defamation (Count II) and breach of contract (Count V) under Illinois law. Defendants move for dismissal essentially count-by-count, and Smoler responds in kind. The Court addresses the parties' arguments in the same manner.

### 1. Procedural Due Process

Invoking 42 U.S.C. § 1983,[4] Smoler alleges the Board violated her procedural due process rights guaranteed by the Fourteenth Amendment. "Section 1983 creates a 'species of tort liability,'" *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976)), against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983. The Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Smoler alleges due process violations under three separate theories, and the Court addresses each in turn.

### A. Property Interest

In Count I, Smoler alleges that the manner in which the Board issued the NTR deprived her of property without the due process the Constitution requires. To plead such a procedural due process violation, Smoler must adequately allege: (1) she had a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010).

Regarding the first element, it is well-settled that "[a]lthough the Fourteenth Amendment protects property rights, it does not create them. Instead, property rights are created and their

---

[4] Smoler only specifically alleges that Count I is brought pursuant to 42 U.S.C. § 1983. However, as explained below, Counts III and IV also allege due process violations, and Section 1983 provides the vehicle to bring such claims. *See Townsend*, 256 F.3d at 669 (liberty interest claim brought under Section 1983); *see also Palka*, 623 F.3d at 453 (constructive discharge and coerced resignation claims brought under Section 1983). Although the parties do not address it, the Court notes that because Smoler brings claims against the Board, i.e., a government entity, her constitutional injury must be caused by a government policy; the Board is deemed to have final policymaking authority regarding decisions to hire and fire teachers, and so, its actions are deemed to be pursuant to government policy. *See Bogosian v. Bd. of Educ. of Cmty. Unit Sch. Dist. 200*, 134 F. Supp. 2d 952, 962 (N.D. Ill. 2001) (analyzing issue).

dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Price v. Bd. of Educ.*, 755 F.3d 605, 607-08 (7th Cir. 2014) (quoting *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509-10 (7th Cir. 2013)) (internal quotations omitted). "A plaintiff must identify a source, independent of the Due Process Clause, for the protectable property interest she claims to have." *Id*. (noting that it is "vital" to look to allegations and define property interest at issue). In relevant part, Smoler alleges only that she was employed as a tenured teacher at Winkelman School. (ECF No. 6 at ¶¶ 1, 10.) Under Illinois law, a tenured teacher has a property interest in continued employment. *See* 105 ILCS 5/24-11; 105 ILCS 5/24-12; *see also Townsend v. Vallas*, 256 F.3d 661, 673 (7th Cir. 2001); *Bogosian*, 134 F. Supp. 2d at 963. Smoler makes no attempt to further define her property interest or allege any additional property interest she may have had. So, the Court finds Smoler has sufficiently alleged only that she has a protectable property interest in her continued employment as a teacher.

Again, in Count I, Smoler alleges the manner in which the Board issued the NTR violated her procedural due process rights; more specifically, she alleges the Board did not provide her any notice of the accusations being made against her, any opportunity to respond to the accusations, or any opportunity to have a union representative present at meetings where the Board contemplated and ultimately issued the NTR. (ECF No. 6 at ¶¶ 23-28.) Put another way, Smoler complains of a lack of pre-deprivation procedures. Indeed, due process demands an employer provide certain pre-deprivation procedures to an employee, including at a minimum, notice of any charges, an explanation of the employer's evidence, and an opportunity for the employee to tell her side of the story. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 1491 (1985); *see also Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 804 (7th Cir. 2000).

Defendants argue, however, that the NTR did not deprive Smoler of any property interest, so no pre-deprivation procedures were owed to her before issuing the NTR, and the Court agrees. The NTR outlined deficiencies in Smoler's conduct and required her to take certain actions, like apologizing to the colleague she had disagreements with and making an effort to act more professionally with her colleagues going forward. (*See* Not. to Remedy, Ex. A to Am. Compl., ECF No. 6.) While the NTR stated that failure to comply with these requirements "may result in discipline, up to and including termination," (*id.*), Smoler makes no allegations that the NTR imposed any kind of suspension, affected her pay or work responsibilities, or imposed any sort of indirect economic effect on her. *See Palka*, 623 F.3d at 452-53. As such, Smoler fails to allege the NTR deprived her of continued employment as a teacher, and because Smoler fails to allege such a deprivation, the Board's failure to provide notice and a hearing prior to issuing the NTR cannot amount to a constitutional violation. *See id.* (rejecting plaintiff's argument that a suspension with pay required pre-deprivation due process protections); *see also Townsend*, 256 F.3d at 676 (finding that temporary reassignment of duties, even viewed as a suspension, did not amount to deprivation of property right).

Additionally, in Count I, Smoler alleges the Board did not have Smoler's union representative present at the meetings where the Board was contemplating issuing the NTR. (ECF No. 6 at ¶¶ 26-27). Smoler specifically invokes *NLRB v. J. Weingarten, Inc.*, as the source of her right to union representation. 420 U.S. 251, 260, 95 S. Ct. 959, 965 (1975); (*see also* ECF No. 6 at ¶ 26.) In *Weingarten*, the Supreme Court held that Section 7 of the National Labor Relations Act ("NLRA") requires employers to permit an employee to have a union representative present at any interview that the employee reasonably believes could lead to discipline. 420 U.S. at 260.

Neither Smoler's amended complaint nor her response to Defendants' motion to dismiss is a model of clarity, but Smoler appears to argue her allegations regarding union representation can state a claim. To the extent Smoler contends the absence of a union representative at her meeting with the school's assistant principal or at the January 2019 board meeting where the NTR was adopted amounts to a procedural due process violation, the Court disagrees. While Smoler adequately alleges a property interest in her continued employment, she does not allege—or offer any argument in her response—that this property interest includes a right to union representation or that such a right can constitute a separate property interest. Indeed, other than alleging that no union representative was present at any time prior to the Board adopting the NTR, Smoler alleges nothing about her union, not even its name. Taken together, *Weingarten* and Smoler's allegation that she is a member of a union does not sufficiently allege any property interest that was deprived by the Board's issuance of the NTR.

The analysis does not stop there because, of course, Smoler need not plead legal theories at this stage. *Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 F. App'x 541, 545 (7th Cir. 2018). So the next question is: does Smoler state a claim under any legal theory based on her allegations that she was a union member and that no union representative was present at any time prior to the Board issuing the NTR? Defendants argue the answer to that question is no because the NTR cannot constitute "discipline" that would trigger *Weingarten* rights. Smoler responds the NTR does constitute discipline, so she has adequately alleged a violation of her *Weingarten* rights. (ECF No. 18 at 6-7; ECF No. 20 at 5-8.)

Importantly, regarding Smoler's allegations relating to her union, the parties *only* discuss an employee's statutory right arising under the NLRA and *Weingarten*, which is, again, an employee's right to request a union representative be present at an interview that could lead to

discipline. *Weingarten*, 420 U.S. at 260. Even assuming the NLRA and *Weingarten* could provide some sort of private cause of action, the Court finds Smoler fails to state a claim under this theory. Regarding the issue of whether the NTR qualifies as discipline, the Court thinks the parties do not adequately support their arguments with relevant case law, i.e., cases illuminating what "discipline" means specifically in the context of the NLRA or *Weingarten* and its progeny. Nevertheless, even assuming the NTR could qualify as discipline, Smoler's claim under this theory would still fail. Most damning for Smoler, the Board is not an "employer" under the NLRA, so Smoler does not enjoy *Weingarten* rights. *See* 29 U.S.C. 152(2); *see also Glover v. Bd. of Educ.*, 187 F. App'x 614, 618 (7th Cir. 2006) (finding NLRA does not apply to defendant board of education); *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998) (finding defendant school board to be "political subdivision" and, thus, excluded from NLRA's definition of "employer"). Accordingly, at this time, Smoler's allegations relating to the NTR and her union rights fails to state a claim. The Court dismisses Count I.

### B.  Coerced Resignation and Constructive Discharge

In Count IV—labeled "coerced resignation"—Smoler alleges the Board made her work environment so unbearable that she was forced to resign her position as a tenured teacher. "A public employee who voluntarily resigns cannot complain about a lack of due process, but an 'involuntary' resignation may in certain circumstances form the basis of a due-process claim. Two types of involuntary resignation may qualify—constructive discharge and coerced resignation." *Palka*, 623 F.3d at 453. Constructive discharge happens when an employer makes an employee's job so unbearable that an employee resigns. Coerced resignation happens when an employee is faced with a "Hobson's choice," in which the employee must resign or suffer severe consequences, like facing criminal charges. *Id.*; *see also Patterson v. Portch*, 853 F.2d 1399, 1405-06 (7th Cir.

1988). Both constructive discharge and coerced resignation are treated as if the employee was simply fired, and as such, both theories fall under the procedural due process umbrella. *See Patterson*, 853 F.2d at 1406.

Defendants argue Smoler fails to state a claim under a coerced resignation theory because Smoler fails to allege the sort of "Hobson's choice" that rises to the level of coerced resignation. Without citing any authority, Smoler responds that her allegations do support a coerced resignation theory because the NTR "threatened that plaintiff would be terminated if she did not do all of the acts that were listed in the NTR." (ECF No. 20 at 13.) The Court disagrees with Smoler's characterization of the NTR. Again, the NTR directed Smoler to apologize to the colleague she had a disagreement with and act professionally with colleagues going forward, and the NTR said that failure to take these steps "*may* result in discipline, up to and including termination." (ECF No. 6, Ex. A at 14-15 (emphasis added).) Smoler's lack of legal authority to support her argument is telling; relevant Seventh Circuit decisions show the NTR, which said only that *some* form of discipline *may* happen if Smoler failed to take corrective action, clearly does not amount to a coerced resignation. "The possibility of eventual termination, without more, cannot render a resignation involuntary . . . ." *Ulrey v. Reichhart*, 941 F.3d 255, 263 (7th Cir. 2019) (collecting cases and noting "the rare, legally viable claims of coerced resignation have typically involved threats beyond termination, such as criminal prosecution or physical harm"); *see also Graehling v. Village of Lombard*, 58 F.3d 295, 297-98 (7th Cir. 1995) (affirming dismissal of coerced resignation claim and likening coerced resignation to plaintiff signing a resignation letter while a gun is pointed at his temple); *Palka*, 623 F.3d at 453 (affirming dismissal of coerced resignation claim). Accordingly, Smoler fails to state a claim under a coerced resignation theory.

Alternatively, Smoler contends that, even if the allegations do not support a coerced resignation theory, they do adequately support a constructive discharge theory, and Smoler asks the Court to construe Count IV as alleging constructive discharge. Defendants reply that Smoler cannot "turn her coerced resignation claim into a constructive discharge claim in response to a motion to dismiss," and, even if she could, Smoler fails to alleges facts sufficient to state a claim under a constructive discharge theory. The Court disregards Defendants' first argument because, again, Smoler need not plead specific legal theories at this stage, let alone plead specific labels on her counts. *See e.g., Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1005 (N.D. Ill. 2013).

Smoler alleges enough facts to state a plausible claim under a constructive discharge theory. Again, constructive discharge happens when the plaintiff shows she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). In addition to alleging that the Board issued the NTR falsely branding Smoler a liar, Smoler alleges Defendants falsely accused her of making negative comments about the school principal, falsely told staff and the public that Smoler went on leave because she was pregnant, changed Smoler's performance evaluation process and cycle, took away her keys and her access to the district's network, and otherwise shunned and ostracized her. (ECF No. 6 at ¶ 42.) Smoler alleges actions like these made her working conditions so intolerable that she was forced to resign. (*Id*. at ¶¶ 43-44.)

Defendants argue that these allegations, without more, cannot plausibly allege a due process constructive discharge claim. It is true that to ultimately prove a due process constructive discharge claim, the bar is a high one: "a plaintiff must prove that the defendant engaged in harassing behavior sufficiently severe or pervasive to alter the conditions of her employment." *Witte v. Wisc. Dep't of Corr.*, 434 F.3d 1031, 1035-36 (7th Cir. 2006) (noting due process

constructive discharge claim uses same general approach as a Title VII hostile work environment claim but that alleged working conditions "must be even more egregious than those that would support a finding of a [Title VII] hostile work environment"). However, in arguing to dismiss Smoler's claim, Defendants cite only summary judgment decisions, and this is telling. (*See* ECF No. 21 at 12-13.) While it is true Smoler might not ultimately be able to gather enough evidence to prove her working conditions were intolerable for a reasonable employee, her allegations, along with all reasonable inferences drawn therefrom, plausibly state a claim under a constructive discharge theory. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) (reversing dismissal and noting plaintiff's allegations of "regular belittlement, unfair criticism, and unduly poor assessments . . . may not ultimately qualify as intolerable, but we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required"); *see also Brownlee v. Catholic Charities of the Archdiocese of Chi.*, No. 16-CV-00665, 2017 WL 770997, at *5 (N.D. Ill. Feb. 28, 2017) (explaining pleading standard and denying motion to dismiss plaintiff's constructive discharge claim); *Gaston v. Bd. of Ed. of the City of Chi.*, No. 17 C 1024, 2017 WL 3234375, at *3 (N.D. Ill. July 31, 2017) (finding teacher alleged Title VII hostile work environment based on principal's verbal insults, improper work assignments, and negative performance reviews). Count IV survives.

## C.    Liberty Interest

In Count III, Smoler alleges a due process violation of her occupational liberty interest. "The concept of liberty protected by the due process clause has long included occupational liberty—'the liberty to follow a trade, profession, or other calling.'" *Wroblewski v. Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (quoting *Lawson v. Sheriff of Tippecanoe Cnty.*, 725 F.2d 1136, 1138 (7th Cir. 1984)). To state a claim that a government employer violated this occupational liberty

interest, Smoler must allege: (1) she was stigmatized by the Board's conduct; (2) the stigmatizing information was publically disclosed; and (3) she suffered tangible loss of other employment opportunities as a result of the public disclosure. *Townsend*, 256 F.3d at 669-70. Importantly, "mere defamation by the government does not deprive a person of 'liberty' protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015). Rather, a plaintiff's occupational liberty interest is affected only where her "good name, reputation, honor or integrity" is called into question "in a matter that makes it *virtually impossible* for the employee to find new employment in [her] chosen field." *Townsend*, 256 F.3d at 670 (emphasis added); *see also Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987) (stating government employer's conduct must have "had the effect of blacklisting the employee from employment in comparable jobs"). In other words, "it is only the 'alteration of legal status,' such as government deprivation of a right previously held, 'which, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards.'" *Id.* (quoting *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013)). This requirement is commonly referred to as the "stigma-plus" test. *Mann*, 707 F.3d at 878.

Smoler alleges the Board issuing the NTR violated her liberty interest in pursuing a teaching career. Defendants argue Smoler's claim must fail because Smoler does not allege facts sufficient to satisfy any of the three elements of a liberty interest claim. (ECF No. 18 at 10-11.) Regarding the first element, Defendants argue the relevant substance of the NTR—which again, states Smoler knowingly made false statements about a fellow teacher—are not sufficiently stigmatizing to provide a basis for a liberty interest claim. In support thereof, Defendants cite only decisions finding that a defendant's statements that a plaintiff is incompetent to perform her job does not implicate the plaintiff's liberty interest. Allegations that Smoler knowingly makes false

statements are certainly more stigmatizing than allegations that she is incompetent in performing her job. The allegations that Smoler complains about are the kind that certainly call into question her "good name, reputation, honor or integrity," and, as such, can form the basis of a liberty interest claim. *Townsend*, 256 F.3d at 670. As to the second element, Defendants argue the NTR was never publically disclosed, but as discussed below regarding Smoler's defamation claim, Smoler alleges enough to satisfy this element at the pleading stage.

However, the Court agrees with Defendants that Smoler falls short of alleging facts that satisfy the third element, i.e., that she suffered tangible loss of other employment opportunities as a result of the public disclosure. Again, a liberty interest claim is premised on the idea that a defendant's conduct makes it, not merely more difficult, but *virtually impossible* for a plaintiff to find employment in her field. *Abcarian v. McDonald*, 617 F.3d 931, 941-42 (7th Cir. 2010). A plaintiff must allege she suffered tangible loss of other employment opportunities to satisfy the requirement that her liberty interest claim is not "unduly speculative." *Townsend*, 256 F.3d at 671. Failure to allege facts adequately supporting this third element is grounds for dismissal. *See e.g., Santana v. Cook Cnty. Bd. of Review*, 779 F. Supp. 2d 830, 835 (N.D. Ill. 2011); *see also Brooks v. City of Chicago*, No. 11-CV-2880, 2012 WL 13570, at *6 (N.D. Ill. Jan. 4, 2012); *Foggey v. City of Chicago*, No. 16 CV 10963, 2018 WL 704688, at *8 (N.D. Ill. Feb. 5, 2018); *Baylor v. Gary Pub. Library*, No. 2:10CV395, 2011 WL 1526950, at *5 (N.D. Ind. Apr. 20, 2011).

Here, Smoler vaguely and conclusively states no school district will employ her because of the Board's conduct (ECF No. 6 at ¶ 39), but this is the sort of speculative allegation that amounts to a mere threadbare recital of an element and falls short of making her claim plausible. This is especially true when viewed together with her other allegations that she was not fired by the Board but rather was permitted to continue teaching, even given the Board's allegations of

dishonesty contained in the NTR. *See Abcarian*, 617 F.3d at 942 (affirming dismissal of liberty interest claim where plaintiff was permitted to continue working even though plaintiff complained of not being able to find future employment). Smoler alleges no facts showing she has failed to find another teaching job or that she even has some reasonable basis to believe the NTR acted to blacklist her from the teaching profession, and her single, conclusory allegation that no other school district would employ her is speculative and does not suffice. Smoler fails to show otherwise; indeed, Smoler makes no attempt to address this issue in her response. Accordingly, Count III is dismissed.

### 2. Defamation

In Count II, Smoler attempts to state a defamation *per se* claim against the Board based on the allegedly false contents of the NTR, which "branded [Smoler] as a liar." (*See* ECF No. 6 at ¶¶ 29-36.) Under Illinois law, to state a defamation claim, a plaintiff must allege facts showing: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication caused damages. *Green v. Rogers*, 234 Ill.2d 478, 491, 917 N.E.2d 450, 459 (Ill. 2009). If a false statement is defamatory *per se*, the plaintiff need not show special damages because the harm is obvious and apparent on its face. *Id.*; *see also Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 411, 667 N.E.2d 1296, 1301 (Ill. 1996). In Illinois, there are five categories of statements that are considered defamatory *per se*: (1) words that impute a crime to a person; (2) words implying that a person is infected with a loathsome communicable disease; (3) words implying that a person is unable to perform or lacks integrity in performing her employment duties; (4) words that prejudice a party, or impact a lack of ability, in her profession; and (5) words implying that a person has engaged in adultery or fornication. *Green*, 234 Ill.2d at 491-92.

Defendants argue that Smoler fails to state a defamation *per se* claim for two reasons. First, Defendants argue Smoler fails to adequately allege the Board "published" any defamatory statement. Second, they argue the alleged defamatory statements are not actionable because of the so-called "innocent construction rule." As to Defendants' first argument, "publication" is a term of art in defamation law; a defendant "publishes" a statement when the defendant communicates or conveys it to someone other than the plaintiff. *Missner v. Clifford*, 393 Ill. App. 3d 751, 763, 914 N.E.2d 540, 522 (Ill. App. Ct. 2009). In support of their motion to dismiss, Defendants attach the meeting minutes for the Board's January 24, 2019 meeting. Defendants argue these minutes reflect that the Board voted to approve the NTR, but there is nothing to show the Board actually published, i.e., communicated, any portion of the NTR to the public. (ECF No. 18 at 8.)[5] While it is true the meeting minutes do not contain any of the NTR's alleged defamatory material, the minutes are not a transcript of the meeting. In other words, the minutes do not show definitively that the Board never publically communicated the NTR's contents at the January 24, 2019 meeting. Smoler alleges the meeting was a public one and that the Board published the NTR's contents to members of the public. (ECF No. 6 at ¶¶ 18, 33.) Taken as true and drawing all reasonable inferences therefrom, Smoler's allegations suffice for now. *See Missner*, 393 Ill. App. 3d at 763 (noting generally that "[w]hether a publication occurred at all is a question for the jury").

The Court need not linger long on Defendants' second argument. Under Illinois' "innocent construction rule," a statement cannot be actionable *per se* if, taken in context, it can reasonably be innocently interpreted or interpreted as referring to someone other than the plaintiff. *Anderson*, 172 Ill. 2d at 411. (finding innocent construction rule applied where defendants' remark, taken in

---

[5] Although the Board's meeting minutes are materials outside the pleadings, the Court can properly take judicial notice of the minutes without converting Defendants' motion into one for summary judgment. *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); *see also Chavarin v. Westchester Pub. Library Bd. of Trustees*, No. 15 C 2040, 2015 WL 5117859, at *3 n.2 (N.D. Ill. Aug. 28, 2015).

context, was understood to mean that plaintiff did not fit in with the defendant organization, and did not mean she was generally unable to perform the job); *see also Copot v. Stewart Title Guar. Co.*, No. 19 C 6987, 2020 WL 1849204, at *9 (N.D. Ill. Apr. 13, 2020) (finding statement about plaintiff could be reasonably construed to mean plaintiff performed poorly only in specific job and not that plaintiff performed poorly in general or would perform poorly in the future). Here, Defendants argue the NTR can be innocently interpreted. Defendants explain that the NTR does not "brand" Smoler as a "liar" but instead merely states she knowingly made false statements about a colleague. (ECF No. 18 at 9.) Defendants do not cite authority showing how the latter interpretation can constitute an innocent construction, and the Court views Defendants as drawing a distinction without a difference: "liar" is a succinct term for one who knowingly makes a false statement.[6] Accordingly, Defendants fail to show that the innocent construction rule applies here, and the Court denies their motion as to Count II.

### 3. Breach of Contract

Finally, in Count V, Smoler attempts to make out a state law claim for breach of contract. Smoler attaches the Board's "Uniform Grievance Procedure" ("UGP") to her amended complaint, (*see* UGP, Ex. C to Am. Compl., ECF No. 6), and she argues the Board failed to follow the UGP in handling the complaint she made about her colleague to the school's assistant principal. (ECF No. 6 at ¶¶ 45-50.) Defendants argue Smoler fails to allege facts that the UGP qualifies as an enforceable contract. The Court agrees with Defendants.

To state a breach-of-contract claim in Illinois, Smoler must allege: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) injury to the plaintiff. *Van Der Molen v. Washington Mut. Fin., Inc.*, 359 Ill. App. 3d 813, 823,

---

[6] *See* LIE, Black's Law Dictionary (11th ed. 2019) ("A false statement or other indication that is made with knowledge of its falsity; an untruthful communication intended to deceive.")

835 N.E.2d 61, 69 (Ill. App. Ct. 2005). Regarding the first element, a plaintiff must allege facts establishing that the parties exchanged an offer, an acceptance, and consideration. *Mulvey v. Carl Sandburg High Sch.*, 2016 IL App (1st) 151615, ¶ 29, 66 N.E.3d 507, 513 (Ill. App. Ct. 2016). An employee handbook or policy statement can qualify as an enforceable contract if the traditional requirements for contract formation are present. More specifically, a plaintiff must allege: (1) the language of the policy statement contains a promise clear enough that an employee would reasonably believe an offer has been made; (2) the policy statement was disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee accepts the offer by commencing or continuing to work after learning of the policy statement. *Id.*; *see also Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318 (Ill. 1987) (holding employer's policy can constitute binding contract if three elements are met).

Defendants argue Smoler fails to allege facts showing offer, acceptance, and consideration as required by *Duldulao*. The Court agrees that, at the very least, Smoler fails to allege facts showing acceptance and consideration. Smoler's amended complaint is devoid of any allegation that the UGP was disseminated to Smoler, that Smoler was aware of the UGP, or that Smoler commenced or continued working as a teacher after learning about the UGP. The only fact contained in the amended complaint that could be read to bear on these issues is the fact that the Board adopted the UGP policy on May 26, 2016, and this fact is gleaned from the policy itself. (ECF No. 6, Ex. C at 5.) This fact alone may allow the Court to reasonably infer the UGP was in effect when Smoler had a conversation with the school's assistant principal about her colleague, but without more, the Court cannot reasonably infer Smoler knew about the policy or consented to it. *See e.g., Hohmeier v. Leyden Cmty. High Sch. Dist. 212*, 954 F.2d 461, 466 (7th Cir. 1992)

(finding Illinois breach-of-contract claim failed where plaintiff only showed she learned of school board's policy at time of termination and thus could not have accepted it to create enforceable contract). Notably, Smoler specifically alleges that she did not affirmatively file a complaint under the UGP but rather that the Board treated her conversation with the assistant principal as a formal complaint. (ECF No. 6 at ¶¶ 15, 47.) Accordingly, Smoler fails to allege facts sufficient to state a claim for breach of contract, and the Court dismisses Count V.

Moreover, even putting the issue of contract formation aside, the Court struggles to see how Smoler alleges the requisite breach of contract. Importantly, the UGP only covers certain kinds of complaints; the UGP states it covers only complaints that the Board or its agents have violated rights guaranteed by federal or Illinois law or Board policy, and the UGP goes on to specifically list a number of federal and Illinois statutes that are covered. (ECF No. 6, Ex. C at 1.) Again, Smoler alleges that, although she never filed any complaint, Defendants treated her conversation with the assistant principal as a formal complaint under the UGP. So according to Smoler, the issue she raised with the assistant principal is the complaint. The problem is that the issue Smoler had with her colleague is only vaguely referred to in the amended complaint; Smoler complained to the assistant principal about her colleague's negative treatment of certain "minority students" and her colleague's negative response to Smoler after Smoler raised the issue with the colleague. (ECF No. 6 at ¶¶ 11-15, 33.) Smoler provides no other details. Based on these facts alone, the Court cannot see how the colleague's conduct can amount to violation of anyone's rights guaranteed by any federal or state law or Board policy referred to in the UGP. Because Smoler fails to allege she complained of any kind of violation, Smoler fails to allege her conversation could even qualify as a complaint that could trigger contractual duties under the UGP that Smoler claims the Board violated. This pleading failure also justifies dismissal of Count V.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [17]. The Court dismisses Counts I, III, and V without prejudice. If Plaintiff desires to file an amended complaint and can do so consistently with this Memorandum Opinion and Order and Rule 11 of the Federal Rules of Civil Procedure, she may do so within 21 days.

**SO ORDERED.**                                          **ENTERED: March 5, 2020**

<br>

_____
**HON. JORGE ALONSO**
**United States District Judge**