IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DANA SMOLER**, | ) |
| Plaintiff, | ) **Case No.: 20 CV 00493** |
| vs. | ) **HONORABLE JORGE ALONSO** |
| **BOARD OF EDUCATION for WEST NORTHFIELD SCHOOL DISTRICT #31,** and **NANCY HAMMER, JEFFREY STERES, DAPHNE FRANK, ROBERT REISS and BOB SPECTOR, in their individual capacities,** | ) |
| Defendants | ) |

## SECOND AMENDED COMPLAINT

Now comes the plaintiff, Dana Smoler by and through her attorney, Steven E. Glink, and complaining against the defendants, states as follows.

## STATEMENT OF THE CASE

This case involves a young idealistic teacher who fell out of favor with her principal, her superintendent, her union and ultimately the board of education because she questioned the way one of her colleagues, K.L., a member of the union's executive board, was treating plaintiff in regards to how plaintiff was advocating for commonly shared minority students who were also

-1-

on District structured behavior plans. Smoler followed policies and was seeking support and guidance from her direct supervisor for assistance in resolving conflict and clarification surrounding these structured behavior plans. During that conversation with her direct supervisor, no formal written complaint was ever made. Smoler was further victimized by the school board and board employees who treated her in an extremely hostile manner after she raised her concerns to the assistant principal. Ultimately, the defendants violated Smoler's rights to due process of law by disciplining her to wit, issuing a Notice to Remedy without advising Smoler of the accusations against her before the BOE and without giving her any opportunity to respond to any allegations against her before imposing the NTR. The defendants' NTR publically branded Smoler as a liar and ultimately ruined her career as a teacher. Smoler now seeks the justice she deserves.

## THE PARTIES

1. At all times relevant to this Complaint, Dana Smoler ("Smoler" was employed by the Board of Education ("the BOE") of West Northfield School District #31 ("the District") as an excellent rated tenured teacher at Winkelman School (WS).

2. The BOE is a group of private citizens who have been elected to their offices and have all powers given to them, express or implied, by § 5/10 of the Illinois School Code, including but not limited to the hiring and dismissal of employees.

3. At all times relevant to this Complaint, all of the named individual defendants had been elected to the BOE for the district and had all powers, express or implied, provided by law.

## VENUE AND JURISDICTION

4. This case is brought pursuant to the due process clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. 1983 to protect plaintiff's rights.

5. Jurisdiction is proper pursuant to 28 U.S.C. 1331.

6. Venue is proper pursuant to 28 U.S.C. 1392.

7. Defendants reside and have their principal place of business in Northbrook, Cook County, Illinois.

8. All material acts pleaded in this complaint occurred in Northbrook, Cook County, Illinois.

## FACTS COMMON TO ALL COUNTS

9. At all times relevant to this complaint. Smoler had been employed by the BOE/ the district as an excellent rated tenured PE / Wellness teacher at WS.

10. On several occasions, plaintiff experienced unprofessional, negative interactions with one of her colleagues, KL regarding some minority students who were on district structured behavior plans which they had in common.

11. On November 9, 2018, pursuant to board policies #2:001 # 5:006 and #5.029 (copies of which are attached as exhibits A and B respectively), plaintiff met confidentially with one of her direct supervisors, assistant principal, Nino Alvarez, in good faith, to discuss this situation and to obtain his counsel and guidance as to how plaintiff should formally address this situation.

12. During the course of her conversation with Alvarez, plaintiff stated to Alvarez that she had attempted to discuss this situation directly with KL and felt abused and humiliated by KL's responses.

13. At no time did plaintiff ever file a formal written complaint with any complaint manager, any administrator or the BOE regarding the situation with KL as policies #2.001 and #5.029 indicate as plaintiff was not making a complaint: she was simply seeking guidance and support on how to address the situation.

14. Without any warning to the plaintiff and without her knowledge, the administration, launched an internal investigation into what administration labeled as "plaintiff's complaint."

15. At the conclusion of their internal investigation, the administration referred "plaintiff's complaint" to the BOE.

## COUNT I-VIOLATION OF CIVIL RIGHTS

16. This count is brought pursuant to 42 U.S.C. 1983.

17. Plaintiff incorporates her allegations contained in paragraphs 1-15 above as her allegations for this count.

18. At all times relevant to this complaint, plaintiff was a member of the West Northfield Teachers' Association (WNTA), which is the exclusive bargaining agent for the West Northfield School District # 31.

19. At all times relevant to this complaint, there was a collective bargaining agreement in place and in effect between the WNTA and the BOE (a copy of Article XII (duration) is attached as exhibit E).

20. Pursuant to Article 5.3 of the CBA, "[E]ach teacher shall have the right to be accompanied by a person of his/her choosing …**at any meeting with the Board** or an administrator which **may reasonably lead to a written reprimand**, a suspension or dismissal for any disciplinary reason' (emphasis added) (a copy of this section is attached as ex. F).

21. Article 5.3 of the CBA also requires that "the teacher" shall be given reasonable advance notice of such meeting; notice of the right to representation; notice of the reason for the meeting and notice of the fact that disciplinary action may result.

22. The CBA created a property interest/right for plaintiff to be advised of any and all accusations against her AND to provide a meaningful response to the BOE before the BOE voted to impose any written reprimand and/or any other disciplinary action against the plaintiff.

23. Similarly, under the CBA, the plaintiff had a property interest/right to have a representative of her choice accompany her to any meeting where the BOE was contemplating issuing any written reprimand and/or any other disciplinary action against the plaintiff.

24. The defendants violated plaintiff's constitutional rights to procedural due process in one or more of the following ways:
    a) They failed to give plaintiff advance notice of any kind that they were holding a meeting where any written reprimand or other disciplinary action may result against her;
    b) They failed to give plaintiff advance notice of the reasons for said meeting;
    c) They failed to give plaintiff advance notice that she had a right to have a representative of her own choosing at said meeting;
    d) They failed to provide the plaintiff with any opportunity to respond to any accusations against her;
    e) They failed to invite plaintiff's representative of choice to any meeting, including but not limited to the school board meeting of January 24, 2019 where the imposition of a written reprimand or other disciplinary action against the plaintiff was discussed.
25. On January 24, 2019, at a regularly schedule school board meeting, the BOE discussed this matter in closed /executive session. At the conclusion of that discussion, in open public session, the defendants voted to issue plaintiff a NTR (a copy of the BOE's resolution is attached as exhibit C).
26. The NTR (attached as exhibit D) stated that plaintiff "…knowingly made false statements about a colleague."
27. As a direct and proximate result of defendants' actions, plaintiff was denied her constitutional right to due process of law to defend herself against the false accusations against her.

WHEREFORE, plaintiff respectfully prays that this Honorable Court enter a judgment in her favor against all of the defendants, jointly and severally, in an amount in excess of $200,000 plus costs and reasonable attorney's fees.

## COUNT II-DEFAMATION

28. This count is a state law claim for defamation and is directed against all individual defendants in their personal and official capacities.

29. Plaintiff incorporates her allegations in paragraphs 1-7 above as her allegations for this count.

30. As an excellent rated tenured teacher, plaintiff has a property right to continued employment.

31. Similarly, as an excellent rated tenured teacher, plaintiff has a recognized liberty interest in her good name and reputation.

32. The NTR, which was adopted at a public BOE meeting publicly stated that plaintiff "…knowingly made false statements about a colleague".

33. Every statement that the plaintiff made about her difficulties with KL to AP Alvarez or any other school district employees was truthful.

    34. The statement contained in the NTR is defamatory per se because (1) it is false statements of fact: (2) it is not privileged communications: (3) it was made with malice in a deliberate attempt to retaliate against the plaintiff for raising concerns about KL's treatment of the commonly shared minority student on district structured behavior plan, at issue and with the intent to harm the plaintiff's reputation as a teacher; (4) they were published to members of the public; (5) they disparage plaintiff in the performance of her job as an excellent rated tenured teacher because, according to the school district's evaluation criteria, the teacher can be counted on to hold the highest standards of honesty, integrity, and confidentiality and takes a leadership role with colleagues.

35. The false accusations contained in the NTR have caused damage to plaintiff's personal and professional reputation.

36. The false accusations contained in the NTR have also caused plaintiff to suffer severe emotional distress, including but not limited to anxiety and PTSD.

37. Defendant's actions have caused plaintiff to suffer "stigma plus" as that term is used in federal case law.

WHEREFORE, plaintiff respectfully prays that this Honorable Court enter a judgment against the defendants, jointly and severally, in an amount in excess of $200,000.

## COUNT III-VIOLATION OF LIBERTY INTEREST

38. Plaintiff incorporates her allegations in paragraphs 1-37 above as her allegations in this count.

39. The plaintiff has a right and a liberty occupational interest in pursuing a teaching career.

40. A teacher's reputation for truth and honesty is an essential part of the job.

41. The defendants' action of publicly stating that plaintiff "…knowingly made false statements about a colleague" has stigmatized her by words that impugn her character and impugn her integrity in the performance of her duties as a teacher.

42. After the BOE imposed the NTR, plaintiff consulted with several mentors, who told her that no school district will likely employ her after, based on the content of the NTR (e.g. plaintiff was effectively blacklisted).

43. In addition, the content of the NTR caused such severe emotion distress on plaintiff that she could not bring herself to apply for any other teaching positions.

44. Defendants' actions have traumatized the plaintiff and caused her to suffer extreme and severe emotional distress, which is ongoing.

WHEREFORE, plaintiff respectfully prays that this Honorable Court enter a judgment against the defendants, jointly and severally in an amount in excess of $200,000, plus costs and reasonable attorney's fees.

## COUNT IV- CONSTRUCTIVE DISCHARGE

45. Plaintiff incorporates her allegation in paragraphs 1-27 as her allegations in this count.

46. After the defendants imposed the NTR on the plaintiff, they created a hostile working environment for the plaintiff in one or more of the following ways:
    A. Administration falsely accused the plaintiff of writing/ sending negative comments about principal Erica Berger;
    B. The administration at WS shunned and ostracized the plaintiff;
    C. Administration changed plaintiff's performance evaluation process and cycle;
    D. Administration took away plaintiff's access to the district's network;
    E. Administration took away plaintiff's keys;
    F. Administration disclosed in an email to staff that plaintiff would be out on FMLA. Plaintiff never gave the district any permission to disclose any information on /about her condition or long term leave of absence as she is protected by HIPAA.
    G. When plaintiff's long term sub position was posted, it was posted for a long term maternity leave (plaintiff had staff contact her and ask if she was pregnant and had community members send their blessing/ try to state they were worried about her)
47. As a direct and proximate result of defendants' collective actions, plaintiff went on FMLA leave for severe anxiety on April 1, 2019
48. On July 17, 2020, plaintiff resigned her position as a tenured teacher because her working conditions were so intolerable that no reasonable person could have been expected to endure it.

WEREFORE, plaintiff respectfully prays that this Honorable Court enter a judgment against the defendants, jointly and severally in an amount in excess of $200,000 plus costs.

## COUNT V-BREACH OF CONTRACT-RETALIATION

49. At all times relevant to this complaint, the defendant BOE had adopted various polices.

50. Policies 2.001; 5.029 (exhibits A and B) and 2.001, the Uniform Grievance Procedure (attached as exhibit G) were in full force and effect at all times that plaintiff was employed by the BOE.

51. The BOE disseminated these policies to all of its employees including by directing the employees to familiarize themselves with said policies.

52. Said policies are also on the district's website, which is accessible to the public.

53. Plaintiff understood that the BOE adopted these policies with the intent that all employees be bound by these policies.

54. Plaintiff understood and accepted that these policies were binding on all employees, including plaintiff, who signified her acceptance by continuing to work in D 31.

55. Plaintiff followed policies 5.006 and 5.029 when she consulted with AP Alvarez about her difficulties with her colleague.

56. Although the plaintiff never filed a formal written complaint about what she reasonably believed was unfair and inappropriate treatment, district administrators treated plaintiff's conversation as being within the purview of the UGP and anti-harassment policies (2.001 and 5:029).

57. In response to plaintiff's conversation with AP Alvarez, defendants violated their UGP policy as well as the anti-retaliation provisions of state and federal law in one or more of the following ways:

    a) They never appointed a complaint manager to independently investigate plaintiff's concerns;

    b) They failed to ensure that the plaintiff had an equal opportunity to present evidence during the investigation;

    c) The complaint manager never presented a written report of her findings to the superintendent;

    d) The superintendent never submitted her written decision to the plaintiff;

    e) Because the superintendent never issued her written decision to the plaintiff, plaintiff was denied her right to appeal the superintendent's decision to the BOE

    f) Defendants retaliated against the plaintiff for voicing her concerns to AP Alvarez by issuing the NTR.

58. As a direct and proximate result of defendants' actions, plaintiff developed severe anxiety and was granted FMLA leave. Plaintiff eventually was forced to resign her position as a tenured teacher thereby causing serious economic loss of salary, insurance coverage and pension.

WHEREFORE, plaintiff respectfully prays that this Honorable Court enter judgment against the defendants jointly and severally in an amount in excess of $200,000.

                        Respectfully submitted,

                                              s/ Steven Glink
                                                STEVEN E. GLINK

Law Offices of Steven Glink, ARDC # 6180869
Attorney for Dana Smoler
PO Box 1053
Northbrook, Illinois 60062
847/480-7749 (VOICE)
Email: steve@educationrights.com