UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANA SMOLER, ) | |
| ) | |
| Plaintiff, ) | Case No. 20 CV 00493 |
| ) | |
| v. ) | Judge Jorge L. Alonso |
| ) | |
| BOARD OF EDUCATION for WEST ) | |
| NORTHFIELD SCHOOL DISTRICT ) | |
| #31, et al, ) | |
| ) | |
| Defendants. ) | |

## Memorandum Opinion and Order

Plaintiff Dana Smoler, a former teacher, filed a complaint against the Board of Education and individual board members alleging that the board members breached their contract with her, defamed her reputation, and violated her constitutional right to due process. Defendants filed a motion to dismiss Smoler's Second Amended Complaint. For the reasons below, Defendants' motion [26] is denied in part and granted in part. Smoler's complaint is dismissed as to Counts I, II, III, and V. The motion is denied as to Count IV.

## Background

The Court takes the following facts from Smoler's Second Amended Complaint. Winkelman School employed Smoler as a tenured teacher. Winkelman School belongs to West Northfield School District #31. Smoler was a member of the West Northfield Teachers' Association, which has a collective bargaining agreement in place with the Board of Education for the West Northfield School District ("Board").

While working at Winkelman School, Smoler grew concerned with how one of her colleagues treated minority students on district-structured behavioral plans. After several

negative interactions with this colleague, Smoler met with the assistant principal to discuss her concerns and receive advice as to how she should formally address the situation. Following that meeting, the administration launched an internal investigation. Smoler had no knowledge of this investigation.

After the investigation concluded, the situation was referred to the Board. In a closed meeting, the Board discussed the concerns disclosed in Smoler's conversation with the assistant principal. The Board didn't give notice of the meeting to Smoler and didn't inform her that she could have representation or an opportunity to respond to any accusations made against her. At the end of the meeting, the Board voted to issue Smoler a "Notice to Remedy." Among other things, the Notice to Remedy stated that the Board found Smoler's performance unsatisfactory and that if she did not fix her deficiencies, she would risk termination. It also stated that Smoler "… knowingly made false statements about a colleague." Smoler contends these accusations are false.

Following the Notice to Remedy, Smoler struggled to continue to work at Winkelman School. The administration shunned and ostracized her, took away her keys and access to the districts network, and changed the way she was evaluated. Moreover, several mentors told her that because of the Notice to Remedy, no other school district would employ her. Additionally, Smoler contends that she faced such significant emotional distress that she could not apply to any other jobs. She eventually went on Family and Medical Leave due to severe anxiety, though the administration told the staff and community members it was due to pregnancy. In the end, Smoler resigned from her position as a tenured teacher because of her working conditions.

Smoler subsequently filed a First Amended Complaint against the Northfield School District, the Board of Education for West Northfield School District, and five individual Board

members. In that complaint, Smoler claimed three due process violations: a property interest violation; a liberty interest violation; and coerced resignation or, in the alternative, constructive discharge. She also brought two counts under state law for defamation and breach of contract. Defendants filed a motion to dismiss, which was granted in part and denied in part. The Court dismissed Smoler's property interest, liberty interest, coerced resignation, and breach of contract claims, in turn dismissing the School District and the individual Board Members in their official capacities. The Court declined to dismiss Smoler's constructive discharge and defamation claim.

On March 26, 2021, Smoler filed her Second Amended Complaint. This Complaint sues the Board of Education and the five individual Board members in their individual capacity. Smoler states the same five legal claims contained in her First Amended Complaint. She added several factual allegations to try and cure the previously identified deficiencies. The Board of Education and the five individual Board members filed a motion to dismiss.

## Standard of Review

Dismissal is appropriate under Rule 12(b)(6) when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12 motion to dismiss, a court accepts all well-pled facts as true and will grant the motion only when the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To determine whether a plaintiff's claim is plausible, a court will consider facts stated in the complaint, as well as any attached documents referred to in the complaint and central to plaintiff's claim. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Moreover, when deciding a Rule 12(b)(6) motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff." *Tamayo v. Blagojevich*,

526 F.3d 1074, 1081 (7th Cir. 2008). This requires the court to draw all possible inferences in plaintiff's favor. *Id*.

## Discussion

Smoler brings three separate due process claims under 42 U.S.C. § 1983: a violation of her due process property right (Count I), a violation of her due process liberty interests (Count III), and a claim for constructive discharge[1] (Count IV). She also alleges two state law violations: defamation (Count II) and breach of contract (Count V). Smoler brings her claims against several Defendants: the Board of Education of West Northfield School District #31 ("Board") and five individual Board members present at the meeting ("Board members"). Defendants' move to dismiss all individual Board members as party-defendants and all claims against the Board. The Court first addresses the Defendants' arguments relating to the individual Board members as party-defendants and then the claims against the Board.

### I. Claims against Defendant Board Members

Defendants argue that the Court should dismiss the claims against the individual Board members. In these claims, Smoler alleges that the Board and the individual Board members violated her procedural due process rights. Smoler concedes, and this Court has previously ruled, that the Court should dismiss any official capacity claim against the individual Board members as redundant. But Defendants also seek to dismiss Smoler's procedural due process claims against the Board members in their personal capacity. Smoler fails to respond to Defendants'

---

[1] Oddly, in the "Nature and History of the Case" section of her brief, Smoler states that her constructive discharge claim is based on state-law, but then later in the same brief she cites to Seventh Circuit case law discussing constructive discharge in the context of 42 U.S.C. § 1983. *See* [31] at pgs. 9-10 (citing *Townsend v. Vallas*, 256 F.3d 661 (7th Cir. 2001)). The Second Amended Complaint does not identify which legal source this claim is connected to. In any event, the Court construes this as a claim for constructive discharge under 42 U.S.C. § 1983.

arguments that the Court should dismiss the section 1983 claims against the individual Board members in their personal capacity.

Personal capacity suits seek to impose individual liability on a government officers for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). To support a §1983 claim against government actors in their personal capacity, a "plaintiff must plead that each government official Defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 662, *Thompson v. Vill. of Monee*, No. 12 C 5020, 2013 WL 3337801, at *9 (N.D. Ill. July 1, 2013). "[A]n official satisfies the personal responsibility requirement of section 1983… if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (citation omitted)). Put differently, without a showing of direct responsibility, personal liability will not lie against a government official. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)

Smoler does not allege facts from which the Court can infer that any individual Board member directly participated in a due process deprivation. As Defendants point out, the fact that the individual board members participated in a vote cannot form the basis of a claim against them. *See Roberts v. Board of Educ.*, 25 F. Supp. 2d 866, 868-869 (N.D. Ill. 1998). Therefore, because Smoler fails to show any kind of direct responsibility on the individual Board members' behalf, Defendants' Motion to Dismiss is granted regarding the individual Board members as Defendants for Counts I, III, and IV.

**II.    Due Process Violations**

Invoking 42 U.S.C. § 1983, Smoler alleges that the Board violated her procedural due process rights guaranteed by the Fourteenth Amendment. "The Due Process Clause provides that certain substantive rights -- life, liberty, and property -- cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Smoler argues three separate theories of due process deprivations: a property interest, a liberty interest, and constructive discharge. The Court addresses each in turn.

### A. Property Interest

In Count I, Smoler alleges the Defendants deprived her of her property interest without due process. Smoler argues that she had a constitutionally protected property interest in the Board following procedures included in the collective bargaining agreement regarding how to handle disciplinary issues. She maintains that the Defendants deprived her of due process of law when they didn't follow these procedures.

To adequately allege a procedural due process violation, Smoler must allege facts that show: (1) she had a cognizable property interest; (2) she was deprived of that property interest; and (3) she was denied due process. *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). Regarding a cognizable property interest, it is well accepted that "[p]roperty interests are not created by the Constitution." *Loudermill*, 470 U.S. at 538 (1985). Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source...[.]" *Id*. (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). Smoler previously alleged due process property interest violation with respect to her continued employment as a tenured teacher. *See* 105 ILCS 5/24-11; 105 ILCS 5/24-12. But as the Court ruled previously, the Notice to Remedy did not deprive her of that interest because it didn't alter her status of employment.

6

Now, Smoler alleges that the Board deprived her of property interests and rights granted to her under the collective bargaining agreement between the West Northfield Teacher's Association and the Board. She argues that the collective bargaining agreement granted her the following property interests and rights: a right to be advised of all accusations against her, a right to provide a meaningful response to the Board before the issuance of a written reprimand, and a right to have a representative of choice at any meeting where disciplinary action was considered. In support, she points to Article 5.3 of the collective bargaining agreement, which reads:

> 5.3 DISCIPLINARY MEETING
> Each teacher shall have the right to be accompanied by a person of his/her choosing, whether a Union representative or otherwise, at any meeting with the Board or an administrator which may reasonably lead to a written reprimand, a suspension or a dismissal for disciplinary reasons. Reasonable advance written notice of such meeting, of the right to representation, of the reason for the meeting, and of the fact that disciplinary action as described above may result, shall be given to the teacher...

The Court concludes that Smoler fails to identify a cognizable property interest protected by the Constitution. The problem with Smoler's position is that she claims a property interest in the disciplinary procedures themselves rather than in her continued employment (which is a statutorily recognized interest). But as the Seventh Circuit makes clear, "a contract which merely creates a right to specified procedures does not create an entitlement upon which a claim of deprivation of property without due process of law can be founded. To bring a case within the orbit of the property concept there must be a substantive entitlement." *Campbell v. City of Champaign*, 940 F.2d 1111, 1113 (7th Cir.1991) (citations omitted). In other words, not every contract creates a constitutional property right. *Id.*

As such, even though the collective bargaining agreement is a contract between the union and school district, it does not create a property right entitling Smoler to the procedures specified in the contract—at least not in the constitutional sense. *See Jit Kim Lim v. Cent. Du Page Hosp.*,

7

871 F.2d 644, 648 (7th Cir. 1989); *see also Fenje v. Feld*, 301 F. Supp. 2d 781, 802 (N.D. Ill. 2003) (collecting cases); *Harris v. City of Chicago*, 665 F. Supp. 2d 935, 950-51 (N.D. Ill. 2009); *McGreal v. Vill. of Orland Park*, No. 12 C 5135, 2016 WL 1535153, at *6 (N.D. Ill. Apr. 15, 2016). Indeed, "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *see also Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) ("So, for example, if state law establishes procedural entitlements, these are not themselves property and will not be enforced in the name of the Constitution"). Smoler has not identified a substantive entitlement; rather, the substantive entitlement would be to the job itself.

And even if the Board deprived Smoler of her rights under Article 5.3 in a contractual sense, not every deprivation caused by a state actor can be remedied under § 1983. *Peters v. Zhang*, 803 F. App'x 957, 959 (7th Cir. 2020). All violations of the collective bargaining agreement involve a failure to follow specific procedures, but this alone does not violate constitutional due process. The Court, therefore, dismisses Count I.

### B. Liberty Interest

In Count III, Smoler alleges a violation of her liberty interest in pursuing a teaching career. "The concept of liberty protected by the due process clause has long included occupational liberty—'the liberty to follow a trade, profession, or other calling.'" *Wroblewski v. Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (quoting *Lawson v. Sheriff of Tippecanoe Cnty.*, 725 F.2d 1136, 1138 (7th Cir. 1984)). To state a claim that a government employer violated this interest, Smoler must show that: (1) the defendants made stigmatizing comments about her; (2) those comments were public; and (3) she suffered a tangible loss of other employment

8

opportunities as a result. *Brooks v. City of Chi.*, No. 11 C 2880, 2012 WL 13570, at *5 (N.D. Ill. Jan. 4, 2012).

Smoler must allege that she suffered tangible loss of other employment opportunities to meet the requirement that her liberty interest claim is not "unduly speculative." *Townsend v. Vallas*, 256 F.3d 661, 671 (7th Cir. 2001). Smoler's prior complaint lacked this element. Upon amendment, Defendants contend it is still lacking. The Court agrees.

"[M]ere defamation by the government does not deprive a person of 'liberty' protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015). Rather, a plaintiff's occupational-liberty interest is affected only where her "good name, reputation, honor or integrity" is called into question "in a matter that makes it virtually impossible for the employee to find new employment in [her] chosen field." *Townsend*, 256 F.3d at 670.

Smoler alleges that she was blacklisted from employment. Her reasoning behind this allegation is that several mentors told her no school district is likely to employ her due to the Notice to Remedy. Though Smoler's mentors may have made her feel as if she was blacklisted, the complaint lacks facts to support a conclusion that it was impossible for her to find employment. *See Santana v. Cook Cnty. Bd. of Review*, 779 F. Supp. 2d 830, 836 (N.D. Ill. 2011) ("reputational harm alone is not enough"). A liberty interest claim is premised on the idea that a defendant's conduct makes it not merely more difficult, but virtually impossible for a plaintiff to find employment in her field. *Abcarian v. McDonald*, 617 F.3d 931, 941-42 (7th Cir. 2010). Smoler fails to state facts that show such an impossibility.

Moreover, Defendants did not terminate Smoler from her position at West Northfield School District. One its face then, Smoler's allegations cannot support a finding that no tangible

employment opportunity was available to her because she remained employed. *See Abcarian*, 617 F.3d at 941 (holding plaintiff could not show a tangible loss of employment opportunity because he remained employed in his chosen profession). Furthermore, as Defendants point out, Smoler herself stated she has not sought other employment. She also fails to state any tangible reason why her mentors informed her she was blacklisted beyond the issuance of the Notice to Remedy. In sum, Smoler's loss of employment allegations remain "unduly speculative." *Townsend*, 256 F.3d at 671. Therefore, Count III is dismissed.

### C. Constructive Discharge

Lastly, Smoler brings a claim for constructive discharge. She alleges that Defendants created a hostile working environment so unbearable that she needed to take Family and Medical Leave for severe anxiety. She further alleges that she resigned from her position as a tenured teacher because of the hostile work environment.

Constructive discharge occurs when an employer makes work conditions so unbearable that an employee resigns. *Palka*, 623 F.3d at 453. Working conditions are not unbearable merely because a "prospect of discharge lurks in the background." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (citing *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)). A plaintiff must prove that the defendant engaged in "harassing behavior sufficiently severe or pervasive enough to alter the conditions of [their] employment," and that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1035 (7th Cir. 2006) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133-34 (2004)).

The current constructive discharge allegations mirror those made in Count IV of Smoler's First Amended Complaint, which the Court held plausibly stated a claim under a constructive

10

discharge theory. Defendants, however, maintain that Smoler she cannot support a claim against the Board because her allegations focus on the administrations' actions—not the Board's. They further argue that one Notice to Remedy cannot serve as the basis of a hostile work environment. But this position ignores the allegations that the Board issued the NTR falsely branding Smoler a liar, falsely accused her of making negative comments about the school principal, falsely told staff and the public that Smoler went on leave because she was pregnant, changed Smoler's performance evaluation process and cycle, took away her keys and her access to the district's network, and otherwise shunned and ostracized her. These allegations suffice to state a claim under a constructive discharge theory. The motion is, therefore, denied as to Count IV.

### III. Defamation

In Count II of her complaint, Smoler asserts a state-law claim for defamation. Smoler alleges that the false accusations contained in the Notice to Remedy caused damage to her personal and professional reputation. She makes these allegations against all Defendants in their personal and official capacities.

Defendants first argue that the individual Board members enjoy absolute immunity for statements made in their official duties. Notably, Defendants presented this same argument in their initial motion to dismiss. The Court agrees.

It is well-settled that school board officials cannot be held civilly liable for defamatory statements made within the scope of their official duties. *Blair v. Walker*, 64 Ill. 2d 1, 10, 349 N.E.2d 385, 389 (Ill. 1976); *see also Klug v. Chicago Sch. Reform Bd. of Trustees*, 197 F.3d 853, 861 (7th Cir. 1999) (affirming dismissal of complaint and noting Illinois law would provide absolute immunity to defendant school officials for defamatory statements); *Novoselsky v. Brown*, 822 F.3d 342, 349 (7th Cir. 2016) ("Illinois courts have long held that executive branch

officials of state and local governments [including school board officials] cannot be civilly liable for statements made within the scope of their official duties."). Because the Board members made these statements in the scope of their official duties while attending a board meeting, they are immune from suit on defamation grounds.

Defendants next argue that the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") affords the Board a similar immunity from defamation. Section 2-207 provides that, a "local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-107. Consequently, a school board cannot be held liable for defamation. *Horwitz v. Bd. of Educ. Sch. Dist. No. 37*, 260 F.3d 602, 617 (7th Cir. 2001); *Turner v. City of Chi. Bd. of Educ*, No. 17 C 6507, 2018 U.S. Dist. LEXIS 109650 at *16 (N.D. Ill. July 2, 2018) ("the plain language of the Tort Immunity Act bars plaintiffs' defamation claims against the board"). The Court agrees with Defendants that the Board cannot be held liable for Smoler's defamation claims based on the Tort Immunity Act. Count II, therefore, is dismissed.

### IV.  Breach of Contract

Finally, in Count V, Smoler claims breach of contract. To state a breach-of-contract claim in Illinois, Smoler must allege facts that demonstrate: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) injury to the plaintiff. *Van Der Molen v. Washington Mut. Fin., Inc.*, 359 Ill. App. 3d 813, 823 (Ill. App. Ct. 2005). She argues that certain Board policies, along with the allegations made in her complaint, support the existence of a valid and enforceable contract that the Board breached. Though she

has now provided enough facts to support the existence of a valid contract, Smoler fails to show how she performed under that contract. Thus, her claim still fails.

Smoler premises her claim on the following Board policies: (1) Policy 2.001: Uniform Grievance Procedure, (2) Policy 5.006: Employee Ethics, and (3) Policy 5.029: Anti-harassment. An employee handbook or policy statement can qualify as an enforceable contract if the traditional requirements for contract formation are present. *Mulvey v. Carl Sandburg High Sch.*, 2016 IL App (1st) 151615, ¶ 29, 66 N.E.3d 507 (Ill. App. Ct. 2016). More specifically, a plaintiff must allege: (1) the policy statement's language contains a promise clear enough that an employee would reasonably believe an offer has been made; (2) the policy statement was disseminated to the employee in a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee accepts the offer by commencing or continuing to work after learning of the policy statement. *Id.*; *see also Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490 (Ill. 1987) (holding employer's policy can constitute binding contract if three elements are met). The Court previously dismissed Smoler's breach of contract claim for failure to allege facts to show acceptance and consideration. Smoler cures this deficiency by including allegations that: (1) the Board disseminated these policies to all employees; (2) the Board directed all employees to familiarize themselves with these policies; and (3) Smoler signified that she understood and accepted these policies by continuing to work in District 31. Accepting as true and drawing reasonable inferences from these allegations, Smoler properly alleges that the Board's policies served as a valid contract under *Duldulao*.

Defendants argue that even though a contract may have existed, Smoler failed to substantially perform under the contract. Smoler believes that the district administrators treated her conversation with them about her colleague's behavior as "being within the purview of the

13

Uniform Grievance Policy and the anti-harassment policies." [23] at ¶56. Accepting that as truth, Smoler failed to perform what was required of her under these policies. The Uniform Grievance Policy required Smoler to "notify any District Complaint Manager if she believed that the School Board, its employees, or agents have violated her rights." [23-1] at pg. 19. This requirement might be satisfied by her conversation with the assistant principal, although Smoler provides few facts regarding the contents of that conversation. Regardless, under the Uniform Grievance Policy, Smoler was also required to file a complaint with any District Complaint Manager. [23-1] at pg. 20. Smoler herself states that "at no time did plaintiff ever file a formal written complaint with any complaint manager, any administrator or the [Board]." [23-1] at pg. 3. In other words, Smoler did not substantially perform under the Uniform Grievance Policy because she never filed a complaint stating she believed the Board violated her rights.

In addition, the Court still struggles to see how Smoler alleges the requisite breach of contract. The Uniform Grievance Procedure only covers complaints that the Board or its agents have violated rights guaranteed by federal or Illinois law or Board policy, and it goes on to specifically list several federal and Illinois statutes that are covered. But Smoler's complaint only vaguely refers to negative interactions with a colleague. These facts, by themselves, do not demonstrate a violation of anyone's rights guaranteed by any federal or state law or Board policy referred to in the Uniform Grievance Procedure. Thus, the Court cannot see how these conversations with her colleague triggered contractual duties owed to Smoler under the grievance procedure policy.

Nor is the Court persuaded by Smoler's voluntary undertaking argument based on *Jakubowski v. Alden-Bennett Constr. Co.*, 327 Ill. App. 3d 627 (2002). *Jakubowski* addresses whether a landowner contractually assumes a duty to provide security on their land. *Id*. at 636.

But Count V is a breach of contract claim, not a tort claim. And Smoler doesn't premise her allegations on any alleged duty the Board had. A voluntary undertaking theory of liability is simply inapplicable to this case.

In the end, although Smoler successfully stated enough facts to infer the existence of an enforceable contract, she failed to allege that she substantially performed her part of that contract. Because her breach of contract claim fails as a matter of law, the Court need not discuss Defendant's alternative argument that the contract claim is preempted by the Illinois Human Rights Act.

## Conclusion

For the reasons above, the Court grants in part and denies in part Defendant's motion to dismiss. The Court dismisses Counts I, II, III, and V as to all Defendants without prejudice. The Court dismisses Count IV as to the individual Board members only. The Court will permit Plaintiff one final opportunity to amend if she wishes. If so, she must do so by January 28, 2022. Defendants' answer or otherwise responsive pleading is due on or before February 18, 2022. The parties are directed to confer and file a joint status report by January 28, 2022 containing a proposal for discovery and a case management plan that includes the following information: (1) the type of discovery needed, including any potential electronic discovery or bifurcated discovery; (2) the need for any proposed protective orders; (3) a date for Rule 26(a)(1) disclosures; (4) a date for the completion of fact discovery; and (5) whether the parties anticipate expert discovery

**SO ORDERED.** **ENTERED: January 10, 2022**

_____
**HON. JORGE ALONSO**
**United States District Judge**